Hand-Delivered

FILED
ASHEVILLE, NC

FEB 0 2 2022

U.S. DISTRICT COURT
W. DISTRICT OF N.C.

# UNITED STATES DISTRICT COURT
*for the*
Western District of North Carolina
Civil Division

Case Number: 1:22 cv 19

**Plaintiff**

Robert Harrison Kalk

Jury Trial: *(check one)*

☒ Yes  ☐ No

*v.*

**Defendants**

Sheriff Quinten Miller
Captain Jeffrey Littrell
Buncombe County Sheriff's Department

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Non-Prisoner Complaint)

### I. The Parties to this Complaint

A. The Plaintiff

| | |
|---|---|
| Name | Robert Harrison Kalk |
| Address | 49 Country Cove Court |
| | Leicester, NC 28748 |
| County | Buncombe County |
| Telephone Number | 828-777-5884 (Mobile) |
| Email Address | BobKalk@AEVIA.Net |

B. The Defendants

Defendant No. 1
Name: Quinten Miller
Title: Sheriff – Buncombe County North Carolina
Address: 60 Court Plaza, 4th Floor
Asheville, NC 28801
County Telephone Number: (828) 250-4503
E-Mail Address: Unknown
Individual Capacity ☒  Official Capacity ☒

Defendant No. 2
Name: Jeffrey Littrell
Title: Captain – Buncombe County North Carolina
Address: 60 Court Plaza, 4th Floor
Asheville, NC 28801
County Telephone Number: (828) 250-4503
E-Mail Address: Unknown
Individual Capacity ☒  Official Capacity ☒

Defendant No. 3
Name: Buncombe County Sheriff's Department
Address: 60 Court Plaza, 4th Floor
Asheville, NC 28801
County Telephone Number: (828) 250-4503
E-Mail Address: Unknown
Government Agency

## II. Basis for Jurisdiction

42 U.S.C. § 1983, Deprivation of Rights, Privileges, or Immunities secured by the Constitution.

A.

☒ State or local officials (a § 1983 claim)

B.

The Sheriff's Department and the above named senior officials engaged in or supported specific violations of the Plaintiff's Fourth Amendment, Fifth Amendment, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment rights as detailed in the Statement of Claim.

### III. Statement of Claim

*This Statement of Claim includes references to persons whose individual behaviors are addressed in a separate filing within a different jurisdiction. Their inclusion in this narrative is for context only.*

***The Plaintiff*** – Robert Harrison Kalk, has long been engaged in a fervent advocacy for the right of each and every person on earth to be the true arbiter of their own destiny. As a fierce enemy of creeping authoritarianism and by making effective use of online weblogs and podcasts, Kalk has criticized the Supreme Court's sociopathic notion of corporate personhood, the bad actors at the commanding heights of the nation's economy who routinely privatize gains while socializing losses, politicians who are covertly bribed with legalized dark money, truth suppressors with their relentless attacks on net-neutrality and thereby the First Amendment, and those malign actors attempting to sustain the last gasp of racist ideologies embedded in a corrupt cop culture that is deeply vested in the traditions of the slave patrols.

The Plaintiff's adversaries have long held the means, the motive, and a variety of opportunities to inflict damage upon him through the selective amplification, filtration, and contextualization of certain facts surrounding his digital processing and publishing activities. Over a period of about forty years, the Plaintiff's computers have been infected with a variety of malware, including the type that can control his computer remotely. Over the same period he has repaired and upgraded hundreds of computers, processing millions of files belonging to customers. Some procedures have required backups and low level formatting of client owned or salvaged storage devices.

On March 20th in 2021, The Plaintiff made the unfortunate choice of visiting and procuring recording time at the NashVox recording studio where, it is claimed, an employee discovered a USB drive in the reception area, that was alleged to contain one or more photos that were said to exploit one or more minors. In July of 2021, Plaintiff was visited by two Buncombe County, North Carolina detectives that outlined a wildly circumstantial, self-contradictory, and conclusion selective case alleging the storage device belonged to the Plaintiff. Plaintiff told the deputies he didn't believe he had a thumb drive in his possession that day as he sought to borrow one for transferring lyrics from his computer to one with access to a network printer.

Prior to their departure, the local deputies informed the Plaintiff that both of his children had been contacted concerning this matter. His son was told the thumb drive belonged to Plaintiff. His daughter was asked to provide photos of his grandchildren in a vain attempt to link them to whatever imagery police have in their possession. To date no apology has been forthcoming even though law enforcement knows there is no evidence Plaintiff's grandchildren are involved in such activity. The assumption, that every citizen <u>knows</u> the content of every file that chances to reside on any one of their digital devices, puts every citizen at risk; subject to the whims of any public official with an impulse control problem.

One of the Buncombe County deputies repeatedly asked the Plaintiff about his podcast <u>Roaring Twenties Reprise.</u> That series is now titled <u>Union Frameworks</u>. Either series brand would have been discoverable to anyone doing an online search. Plaintiff was then publishing about three programs per week on average and wondered why the deputy zeroed in on that one. Plaintiff subsequently remembered Episode 17, published on April 17th in 2021, was critical of a cop culture that is largely derived from that of the area's slave patrols. The episode titled **Sunsetting the Slave Patrols** included statements some police officers would likely find objectionable.

The Plaintiff was stunned by the reckless and insulting nature of the allegations. If in fact he was the only person

seated within that area, and if he was recording within that studio complex while remaining in the building for over an hour after leaving the waiting room, why wouldn't he have simply been asked if he was missing a thumb drive? The investigators had built a wildly circumstantial case without regard to the subject's course or range of business activities including Uber, Lyft, salvaging drives, swapping drives, or backups from repairs and upgrades for customers.

This case is brought in response to the corrupt and punitive use, by certain officials, of taxpayer resources in ways that indulged their spite over the Plaintiff's exercise of his First Amendment Rights. The false narrative was sold to the Plaintiff's children. It was calculated and calibrated to cause economic, physical, psychological, and reputational damage to the Plaintiff in a reckless disregard of his civil rights. This behavior was brought to the attention of the Buncombe County Sheriff's Office and to the Sheriff personally. The Sheriff, the Captain, and their Department had an opportunity and a duty to mitigate damages from the retaliatory behaviors of subordinates in this matter and yet failed to do so. There is nothing in an official's oath of office, the departmental charter, or the state and federal constitutions that gave officers a license to be punitive. It is clear that a presumption of innocence is not respected by the Defendants.

*The Specific Constitutional Claims are herein delineated as follows:*

*A Violation of Fourth Amendment Rights* – The Plaintiff was seized at his home by a respectful and highly professional arrest team composed of three Buncombe County, North Carolina Deputies acting in good faith, upon an Extradition Warrant secured in bad faith. A false Affidavit had beern filed by Officer Long of the Davidson County Tennessee Police for the purpose of obtaining an Extradition Order. Officer Long's statement included the perjures claim that the Plaintiff had fled from Justice. At no time prior to the seizure did the Plaintiff receive any written notice or subpoena to appear for any Tennessee legal proceeding such as an interrogation, deposition, or hearing.

Upon arrest, the seventy year old Plaintiff was deprived of insulating clothing prior to being held in a refrigerated tank and was required to sit, lay, and sleep on heat-sinking concrete benches and floors without either a pillow or blanket. The Plaintiff sustained injuries to his shoulder, his hips, his knees, and his feet over the course of five days and nights during his incarceration. Plaintiff was also denied diabetic meals and medication causing a blood sugar spike that exacerbated the peripheral neuropathy he was experiencing prior to incarceration and resulting in what is now clearly diabetic nerve pain.

*A Violation of Fifth Amendment Rights* – The Plaintiff was deprived of liberty through a short circuiting of Due Process in ways that are offensive to the rule of law. The Plaintiff was informed, six months before his arrest, only that there was an investigation. The message was carried by two Buncombe County Deputies that said "It is now our investigation." The Deputies gave the Plaintiff a name and phone number for Robert Carrigan, the principal investigator in Tennessee. The Plaintiff shared that contact information during a consultation with an attorney recommended by the North Carolina State Bar. That attorney advised the Plaintiff not to talk or write about the case and then provided the Plaintiff with contact information for a Nashville attorney should he subsequently be charged with a crime. Tennessee conducted no substantive due process. There was no presumption of innocence. And no notice was given to the Plaintiff prior to his arrest and subjecting him to punitive measures.

*A Violation of Sixth Amendment Rights* – The Plaintiff was deprived of the right to have Counsel present at questioning prior to any charges being filed. The Plaintiff was also deprived of an ability to communicate with Court appointed Counsel for four days and nights after Council's appointment by the North Carolina Court. Plaintiff informed the guards on numerous occasions that the detention center's *HomeWav* system would not let him call his attorney or his pastor although both appeared in his contact list. Guards repeatedly told the plaintiff that the system displayed "Pending Approval" because "the Captain" had not authorized those contacts. Plaintiff was also denied access to the contact list on his personal phone.

As of the date of this filing, the Plaintiff remains in the dark with respect to the specific nature of any alleged

exploitation or how a determination was made that he was somehow involved. To this day the Plaintiff does not know if the referenced "photo" is simply cover art from a popular Nirvana album or something in which the Plaintiff is alleged to be an actor. The Plaintiff's right to be informed has been abridged. The State of Tennessee has also engaged in selective prosecution as the aforementioned Nirvana cover art is considered exploitative of a minor by Tennessee standards. However, Tennessee has made no effort over the last thirty years to arrest any who were actively selling or are in possession of an explicit photo of Spencer Eldon who is featured on Nirvana's 1991 Nevermind Album?

*A Violation of Eighth Amendment Rights* – The Plaintiff was held in a jail the Asheville Citizen Times has described as "the deadliest in the state." There have been seven suspicious deaths at the Buncombe County Detention Center within the last sixteen months. Depriving a prisoner of clothing that might insulate the torso prior to putting him in an unheated "tank" without a pillow or blanket, to sleep directly on a cold concrete floor, constitutes cruel and unusual punishment for any detainee that is supposed to be presumed innocent. The Buncombe County Sheriff's Department has exhibited deliberate indifference with respect to an Eighth Amendment clause that "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." (Trop v. Dulles, 356 U.S. 86, 100-101 (1958).)

The cruel and unusual punishment clause applies directly to conditions of incarceration. Prison officials may not deprive inmates of "the basic necessities of life, which include reasonably adequate food, clothing, shelter, sanitation, and necessary medical attention." While an inhumane procedure punishes a defendant too severely for any crime, it is especially heinous when it is used to punish those who supposedly have a right to a presumption of innocence prior to any adjudication.

Public opinion is crucial in evaluating whether a punishment is cruel and unusual under the evolving standards test. The Buncombe County holding tank imposes a severe punishment which is patently unnecessary. The United States Supreme Court has held that a punishment would be cruel and unusual if it offended society's sense of justice.

*A Violation of Fourteenth Amendment Rights* – In 1934, the United States Supreme Court held that due process is violated "if a practice or rule offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Tennessee's actions involving North Carolina served to short circuit due process in a way that imposed a deprivation of rights upon the Plaintiff. Because the State failed to provide even the most basic notification before filing for Extradition, Tennessee is also offloading their own administrative burdens and expenses onto the taxpayers within Buncombe County North Carolina.

The falsified affidavit was an integral part of the Extradition Petition which should have resulted in an immediate invalidation ruling and a dismissal. From the time this defect was brought to the attention of the North Carolina Court, four days and nights had elapsed prior to the Plaintiff's release from detention.

### IV. Injuries

The Sheriff's Department imposed punitive and inhumane conditions upon the inmates within the booking area over a period of five days and nights. This runs contrary to the Presumption of Innocence doctrine within US jurisprudence and the UN's Universal Declaration of Human Rights, Article 11. The imposed conditions included depriving inmates, including the Plaintiff, of proper clothing while subjecting them to refrigerator level temperatures and forcing them to sleep on a concrete heat-sink.

The Plaintiff is a seventy year old diabetic. Numerous requests for diabetic meals and medication were ignored. The peripheral neuropathy that was, prior to incarceration localized with the Plaintiff's toes and not painful, is now a wide area nerve pain that has affected the Plaintiff's feet. In addition, the plastic footwear that was provided without including socks, caused scrapes and lacerations while also making the feet more vulnerable to scrapes, cuts, and infections from the surrounding environment. The sleep deprivation was accompanied by continuous shivering throughout the nights and parts of the day. Also, during the unnecessary incarceration the Plaintiff received a death threat prompting three other inmates to array themselves, in a protective posture,

between the threatening inmate and the sleeping Plaintiff. When the threat was brought to the attention of a guard, he simply responded "I'm not surprised."

## V. Relief

Compensatory Damages of $100k, for an estimated 1 Year of time and attention to this matter during a time when the Plaintiff is immersed in the complexities of launching a new business.

Exemplary Damages in an amount to be determined by the Jury, to warn corrupt officers, policymakers and departments.

Punitive Damages, in an amount to be determined by the Jury, to deter similar offenses.

Letters of apology, from each Defendant, to the Plaintiff's children.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        Wednesday, February 2, 2022

Signature of Plaintiff: _[signature]_

Printed Name of Plaintiff :    Robert H. Kalk